Exhibit T-6

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT ("Agreement"), is made and entered into this 27th day of September, 2016 (the "Effective Date"), by and between Joy R. Webster, Trustee in her capacity as Chapter 7 Trustee for Science Fitness, LLC, d/b/a Omni Fitness Evans ("Trustee"), and EVANS FITNESS CLUB EXPRESS, LLC ("Buyer").

## WITNESSETH

WHEREAS, Science Fitness, LLC, d/b/a Omni Fitness Evans operated a gym in Evans, Georgia.

WHEREAS, the Debtor filed a chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Southern District of Georgia on December 8, 2014, and the case is referenced as Case No. 14-12297 SDB.

WHEREAS, the Bankruptcy Case was converted to a chapter 7 bankruptcy on May 2, 2016, and Joy R. Webster was appointed interim trustee in the Bankruptcy Case on May 4, 2016.

WHEREAS, the Trustee wishes to sell the Debtor's assets described in this Agreement in connection with the Bankruptcy Case.

WHEREAS, the Buyer wishes to purchase the Debtor's assets subject to the terms and conditions set forth in this Agreement.

**NOW, THEREFORE**, in consideration of the purchase price (as defined below) and of the mutual promises, obligations and agreements set forth herein, and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Trustee and Buyer agree as follows:

## ARTICLE I - DEFINITIONS

1. <u>Definitions</u>.

    As used in this Agreement, the following terms have the meaning specified in this Article I.

    "Bankruptcy Case" means Case No. 14-12297 SDB commenced by the Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

    "Bankruptcy Code" means Title 11 of the United States Code.

    "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Georgia.

    "Buyer" means Evans Fitness Club Express, LLC, a Georgia limited liability company.

"Debtor" means Science Fitness, LLC, d/b/a Omni Fitness Evans, f/k/a Quantum Fitness.

"Location" means 4408 Evans to Lock Road, Evans, GA 30809.

"Petition Date" means December 8, 2014, the date the Bankruptcy Case was filed.

"Person" means an individual, partnership, corporation, association, limited liability company, joint stock company, trust, joint venture, unincorporated association or governmental entity.

"Trustee" means Joy R. Webster in her capacity as Chapter 7 Trustee of Science Fitness, LLC, d/b/a Omni Fitness Evans.

## ARTICLE II - ASSETS PURCHASED

2. <u>Articles Purchased</u>. On the terms and conditions set forth in this Agreement, at the Closing, the Trustee shall assign, transfer and convey to Buyer, and Buyer shall purchase and acquire from the Trustee, the Acquired Assets. Notwithstanding the foregoing, the Trustee shall not be obligated to sell, and the Buyer shall not be obligated to purchase or acquire from the Seller, the Excluded Assets.

   2.1 <u>Acquired Assets</u>. For purposes of this Agreement, "Acquired Assets" means all of the Debtor's right, title and interest in the following:

   a. All accounts, contract rights, membership agreements, personal training contracts, contracts and all accounts receivable through ABC Financial and ClubReady, furniture, furnishings, equipment, inventory, intellectual property required for the operation of the Debtor's business, goods held for sale, supplies and other materials used or consumed in the Debtor's business. A copy of the equipment list is attached and incorporated into this Agreement.

   2.2 <u>Excluded Assets</u>. For purposes of the Agreement, "Excluded Assets" means the following:

   a. Any assets of the Debtor not defined as Acquired Assets.

   b. Corporate record book and corporate seal.

   c. Securities.

   d. Any claim, right or cause of action of the Debtor or the Trustee that can be brought against third parties pursuant to the Bankruptcy Code.

    e.    Any claim, right or cause of action of the Debtor or the Trustee that can be asserted by the Trustee that is related to the Bankruptcy Case.

    f.    All of the Debtor's tax attributes and all tax refunds to which the Debtor may be entitled with respect to any period of the Debtor's operations through the Closing Date.

    g.    Debtor in Possession bank accounts.

## ARTICLE III - PURCHASE PRICE

3. <u>Purchase Price</u>. In consideration for the Acquired Assets, and subject to the terms and conditions of this Agreement, and the entry and effectiveness of the Sale Order as defined below, before the wire transfer deadline on Thursday, September 22, 2016, the Buyer shall pay to the Trustee the sum of Four Hundred and Five Thousand and Nine Hundred Dollars and 0/100 Dollars ($405,900.00) ("Sales Proceeds") by wire transfer. At the closing on September 27, 2016, the Buyer shall deliver to the Trustee the actual daily costs to operate the Debtor from September 22, 2016 until the closing on September 27, 2016.

## ARTICLE IV - CLOSING

4. <u>Closing</u>. Upon the terms and subject to the satisfaction of the conditions contained in Article of this Agreement, the closing of the sale of the Acquired Assets contemplated by this Agreement (the "Closing") shall take place upon the delivery to the Buyer of the "Sale Order" (as defined in Section 5) or at such other time and date as the parties agree after the entry of the Sale Order.

    4.1 <u>Trustee's Closing Deliveries</u>. At or prior to the Closing, in addition to any other documents specifically required to be delivered pursuant to this Agreement, Trustee shall, in form and substance reasonably satisfactory to Buyer and its attorney, deliver the Buyer the following:

        a.    Bill of Sale executed by the Trustee with respect to the Acquired Assets.

        b.    Other instruments of conveyance or transfer necessary or convenient to convey all of the Debtor's right, title, and interest in to and under the Acquired Assets to the Buyer, duly executed by the Seller.

        c.    Other documents reasonably necessary for the Buyer and its attorney to effect the transactions contemplated by this Agreement.

    4.2 <u>Buyer's Closing Deliveries</u>. At the Closing, in addition to any other documents specifically required to be delivered by this Agreement, Buyer shall, in form and substance reasonably satisfactory to the Trustee and her attorney, deliver to the Seller the following:

    a. Purchase Price in accordance with Section 3. The funds for the Purchase Price shall be paid via wire transfer to the Trustee pursuant to the wiring instructions furnished to the Buyer by the Trustee.

    b. A certificate, duly executed by the Buyer, dated as of the date of the Closing, that the Buyer has performed and complied with all of the terms, provisions and conditions of this Agreement to be performed and complied with by it or at or prior to the Closing and that its representations and warranties are true in material respects as of the date of this Agreement and as of the date of the Closing, except as expressly contemplated or permitted by this Agreement.

    c. Other documents reasonably deemed necessary by the Trustee and her attorney to effect the transactions contemplated in this Agreement.

4.3 <u>Pro-ration of Ongoing Business Expenses and Transition.</u> The Trustee is currently operating the Debtor's business. Any ongoing expenses such as rent, utilities, telecommunication services, and ad-valorem taxes will be pro-rated through the Closing date. On the Closing Date, the accounts for ongoing monthly services such as utilities, telecommunications, and water shall be closed or transferred to the Buyer such that the Buyer is responsible for the costs of any such services after the Closing Date.

## ARTICLE V – BANKRUPTCY COURT APPROVAL

5. <u>Bankruptcy Court Approval</u>. An Order Authorizing the Sale of Property of the Estate Free and Clear of Liens and Encumbrances was entered on September 21, 2016 and a copy is attached to this Asset Purchase Agreement.

## ARTICLE VI - REPRESENTATIONS AND WARRANTIES OF TRUSTEE

6.1 <u>Authority Relative to this Agreement.</u> Subject to the applicable provisions of the Bankruptcy Code and the approval of this Agreement by the Bankruptcy Court, the Trustee hereby represents and warrants that she is authorized to effectuate the transaction contemplated in this Agreement.

6.2 <u>Assets.</u> The Trustee has not previously transferred or licensed any Acquired Assets other than in the ordinary course of business consistent with past custom and practice. The Trustee has good, marketable title to the Acquired Assets and, at the Closing, the Buyer, subject to Bankruptcy Court approval, shall acquire all of the Trustee's right, title and interest in, to and under all of the Acquired Assets free and clear of all liens and encumbrances.

6.3 <u>Brokers.</u> No Person is entitled to any brokerage, financial advisory, finders or similar fee or commission payable by the Trustee in connection with the transactions contemplated by this Agreement.

6.4 <u>Disclaimer of Other Representations and Warranties</u>. Except as expressly set forth in this Article VI, the Trustee makes no representation or warranty, express or implied, at law, or in equity, with respect to any of the Acquired Assets or operations including with respect to merchantability or fitness for any particular purpose or non-infringement, and any such other representations or warranties are expressly disclaimed. The Buyer hereby acknowledges and agrees that, except to the extent specifically set forth in this Article VI, Buyer is purchasing the Acquired Assets on an "AS-IS, WHERE-IS" basis.

## ARTICLE VII-REPRESENTATIONS AND WARRANTIES OF BUYER

7.1 <u>Authority Relative to this Agreement.</u> The Buyer has all power and authority to execute and deliver this Agreement and to consummate the transactions contemplated in this Agreement. The execution and delivery of this Agreement and the consummation of the transactions contemplated hereby have been duly and validly authorized by all necessary corporate proceedings on the part of the Buyer. This Agreement has been duly and validly executed and delivered by the Buyer, and assuming that this Agreement constitutes a valid and binding agreement of the Trustee, constitutes a valid and binding agreement of Buyer, enforceable against Buyer in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, moratorium or other similar laws affecting or relating to enforcement of creditors' rights generally or general principles of equity.

7.2 <u>Legal Proceedings and Judgments</u>. There are no material claims, actions, proceedings or investigations pending or, to Buyer's knowledge, threatened against or relating to Buyer before any court or other governmental authority acting in an adjudicative capacity that could have a material adverse effect on Buyer's ability to consummate the transactions contemplated in this Agreement.

7.3 <u>Brokers.</u> No Person is entitled to any brokerage, financial advisory, finders or similar fee or commission payable by Buyer in connection with the transactions contemplated in this Agreement based upon the arrangements made by or on behalf of the Buyer.

7.4 <u>Buyer Financing.</u> As of the date of this Agreement and on the Closing Date, the Buyer will have funds sufficient to pay the Purchase Price and all of the Buyer's fees and expenses incurred in connection with the transactions contemplated in this Agreement.

7.5 <u>Indemnification of Estate for Prepaid Memberships and Training Packages.</u> The Buyer agrees to indemnify the Trustee for any claims asserted by the Debtor's members related to the closing of its business.

## ARTICLE VIII – COVENANTS OF THE PARTIES

8.1 <u>Access to Information; Maintenance of Records.</u> Between the date of this Agreement

and the Closing Date, the Trustee shall, during ordinary business hours, upon reasonable notice, (i) give the Buyer reasonable access to all books and records constituting the Acquired Assets to which Buyer is not denied access by law; (ii) permit buyer to make such reasonable inspections as Buyer may reasonably request; and (iii) furnish Buyer with such financial and operating date and other information to the extent relating to Acquired Assets as Buyer may from time to time reasonably request; provided however, that (A) any such access shall be conducted at the Buyer's expense; (B) Trustee shall not be required to take any action that constitutes a waiver of the attorney client privilege

8.2 <u>Notices and Consents.</u>  Each of the parties shall give any notices to third parties, and will use commercially reasonable efforts, to (a) obtain any third party consent necessary to consummate the transactions contemplated in this Agreement; and (b) obtain any authorization, consent and approval of government and governmental agencies necessary to consummate the transactions contemplated in this Agreement.

8.3 <u>Power of Attorney; Right of Endorsement, Etc.</u>  Effective as of the Closing, Trustee hereby constitutes and appoints the Buyer and its successors and assigns the true and lawful power of attorney of the Debtor with full power of substitution, in the name of the Buyer or the name of the Debtor on behalf of and for the benefit of the Buyer, (a) to collect all Acquired Assets, (b) to endorse, without recourse, checks, notes and other instruments attributable to the Acquired Assets, (c) to defend and compromise all actions, suits or proceedings with respect to any of the Acquired Assets, (d) to institute and prosecute all proceedings which Buyer may deem proper in order to collect, assert or enforce any claim, right or title in or to the Acquired Assets and (e) to do all such reasonable acts and things with respect to the Acquired Assets as Buyer may deem advisable, subject to the consent of the Trustee, which consent shall not be unreasonably withheld.  Buyer shall retain for its own account any amounts lawfully collected pursuant to the foregoing powers and the Trustee shall promptly pay to Buyer any amounts received by the Trustee after the Closing with respect to the Acquired Assets to which the Buyer may be entitled.

8.4 <u>Litigation Support.</u>  In the event and for so long as any party actively is contesting or defending against any action, suit, proceeding, hearing, investigation, charge, complaint, claim, or demand in connection with (a) any transaction contemplated under this Agreement or (b) any fact, situation, circumstance, status, condition, activity, practice, plan, occurrence, event, incident, action, failure to act, or transaction on or prior to the date of the Closing involving the Acquired Assets, the other party will cooperate with the contesting or defending party and its attorney in the contest or defense of said claim, make available its personnel, and provide such testimony and access to its books and records as shall be necessary in connection with the contest or defense, all at the sole cost and expense of the contesting or defending party (unless the contesting or defending party is entitled to indemnification under this Agreement).

8.5 <u>Indemnity.</u>  Buyer shall indemnify, defend and hold the Trustee harmless from, against and in respect to any and all losses, deficiencies, penalties, fines, costs,

damages and expenses whatsoever (including, without limitation, reasonable professional fees and costs of investigation, litigation, settlement and judgment and interest) that may be suffered or incurred by the Trustee from or by reason of (i) inaccuracy of a representation or breach of warranty made by the Buyer in this Agreement, (ii) any breach of any covenant or agreement made by the Buyer in this Agreement, and (iii) any and all actions, suits, proceedings, claims, demands, assessments, judgments, costs and expenses (including without limitation, interest, penalties, reasonable attorney's fees, and accounting fees) incident to the foregoing and the enforcement of the provisions of this Section 8.5.

## ARTICLE IX - CONDITIONS PRECEDENT

9.1 <u>Conditions to Each Party's Obligations to Effect the Closing.</u> The respective obligations of each party to effect the sale and purchase of the Acquired Assets shall be subject to the fulfillment at or prior to the Closing Date of the following conditions.

   a. No preliminary or permanent injunction, stay pending appeal or other order or decree by any federal or state court that prevents the consummation of the sale as contemplated in this Agreement.

   b. The Sale Order shall have been entered in the Bankruptcy Court.

Any condition specified in Section 9.1 may be waived in writing by the parties.

9.2 <u>Conditions to Obligations of Buyer.</u> The obligation of the Buyer to effect the purchase of the Acquired Assets shall be subject to the following additional conditions.

   a. The Trustee shall have performed and complied in all material aspects with the covenants contained in this Agreement which are required to be performed and complied with by the Trustee on or prior to the Closing Date and the representations and warranties of the Trustee which are set forth in this Agreement shall be true and correct in all material respects as of the date of this Agreement and as of the Closing Date (except to the extent that any such representation or warranty speaks as of the particular date) as though made at and as of the Closing Date.
   b. The Buyer shall have received a certificate from the Trustee, dated as of the Closing Date, to the effect that, to the best of the Trustee's knowledge, the conditions set forth in Section 9.2 have been satisfied.
   c. The Buyer shall have received the other items delivered pursuant to Section 4.1.

Any condition specified in this Section 9.2 may be waived by the Buyer; provided that no such waiver shall be effective against the Buyer unless it is set forth in a writing executed by the Buyer.

9.3 <u>Conditions to Obligations of Seller.</u> The obligation of the Trustee to effect the sale of the Acquired Assets contemplated in this Agreement shall be subject to the fulfillment at or prior to the Closing Date of the following additional conditions:

a. The Buyer shall have performed and complied in all material respects with the covenants contained in this Agreement which are required to be performed and complied with by the Buyer on or prior to the Closing Date and the representations and warranties of the Buyer which are set forth in this Agreement shall be true and correct in all material respects as of the date of this Agreement and as of the Closing Date (except to the extent that any such representation or warranty speaks as of a particular date) as though made at and as of the Closing Date.

b. The Trustee shall have received a certificate from the Buyer dated as of the Closing Date, to the effect that, to the best of the Buyer's knowledge, the conditions set forth in Section 9.3 have been satisfied.

c. The Trustee shall have received the other items to be delivered pursuant to Section 4.2

Any condition specified in Section 9.3 may be waived by the Trustee, provided that no such waiver shall be effective against the Trustee unless it is set forth in writing executed by the Trustee.

## ARTICLE X – TERMINATION

10.1 <u>Termination.</u> This Agreement may be terminated at any time before Closing by:

a. Mutual written consent of the Trustee and the Buyer.

b. The Trustee, if there has been a material violation or breach of the Buyer of any covenant, representation or warranty made by it contained in this Agreement which has prevented the satisfaction of any condition to the obligations of the Trustee to effect the Closing and such violation or breach has not been cured by the Buyer within ten (10) business days of receipt of written notice or is waived by the Trustee.

c. The Trustee or Buyer if (i) there is any law or regulation that makes consummation of the transactions contemplated in this Agreement illegal or otherwise prohibited or (ii) there is a nonappealable final order, decree or judgment of (A) the Bankruptcy Court or (B) any other court or governmental authority with competent jurisdiction which prohibits the consummation of the transactions contemplated in this Agreement or otherwise alters the terms and conditions of the transactions contemplated in this Agreement in any material respect.

d. The Trustee or Buyer if the Closing has not occurred within ninety (90) days after the execution of this Agreement unless extended by mutual written agreement of

the Trustee and Buyer.

e.  The Buyer if there has been a material violation or breach by the Trustee of any covenant, representation or warranty by it contained in this Agreement which has prevented the satisfaction of any of the obligations of the Buyer to effect the Closing and such violation or breach has not been cured by the Trustee within ten (10) business days of the receipt of written notice or is waived by the Buyer.

10.2  Procedure and Effect of Termination. In the event this Agreement is terminated pursuant to Section 10.1, written notice shall be given by the terminating party to the other party, and this Agreement shall terminate and the transactions contemplated in this Agreement shall be abandoned without further order of the Bankruptcy Court and without further action by any of the parties. All filings, applications and other submissions made pursuant to this Agreement shall be withdrawn from the agency or authority to which they were made.

## ARTICLE XI – MISCELLANEOUS

11.1  Notices. All notices, requests, consents and other communications shall be in writing and shall be deemed to have been given (a) if mailed, the date of the Notice when sent via first class US Mail. (b) if faxed, on the first business day after the date of the sender's receipt of a confirmed transmission of such notice to the notice party at the fax number, if any, listed below for such notice party provided the notice party giving such notice mails a copy of such notice within two days after the transmission of such notice by fax to the notice party. The addresses and fax numbers for each party to this Agreement are:

Trustee:            Joy R. Webster, Trustee
                    P.O. Box 1098
                    Macon, GA  31202
                    (478) 742-7101 fax

Attorney for Trustee:  Robert M. Matson
                    Akin, Webster & Matson, P.C.
                    P.O. Box 1773
                    Macon, GA  31202
                    (478) 742-7101 fax

Buyer:              Evans Fitness Club Express, LLC
                    Attn: Amanda M. Bellotti, Registered Agent
                    2604 Commons Blvd
                    Augusta, GA  30909

11.2 <u>Expenses.</u>  Each party will pay all costs, fees and expenses related to the negotiation and preparation of this Agreement and the performance and compliance with respect to this Agreement.

11.3 <u>Governing Law.</u>  This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia.  The Bankruptcy Court shall have exclusive jurisdiction with regard to any action brought to enforce this Agreement or any dispute concerning the interpretation, validity, construction, or other issue relating to or arising from this Agreement.

11.4 <u>Execution in Counterparts.</u>  This Agreement may be executed in one or more counterparts, each of which shall be considered an original counterpart, and all of which shall be considered to be but one agreement and shall be a binding agreement when each party has executed one counterpart and delivered it to the other party.

11.5 <u>Entire Agreement and Assignability.</u>  This Assignment shall inure to the benefit of, and shall be binding upon, each of the parties, their estates, heirs, personal representatives and assigns.  This Agreement constitutes the entire agreement among the parties with respect to the subject matter hereof and supersedes any prior understanding or agreements respecting the subject matter.

11.6 <u>Tax Matters.</u>

    a. All transfer, documentary, sales, use, stamp, registration and other such taxes and fees including any penalties and interest, if any, incurred in connection with this Agreement shall be paid by the Trustee when due, and the Trustee shall at her own expense, file all necessary tax returns and other documents with respect to all such transfer, documentary, sales, use, stamp, registration and other laws and fees and if required by applicable law, the Buyer shall, and shall cause its affiliates to assist in the execution of any such tax returns and other documentation.

    b. All ad valorem taxes including personal property taxes and similar taxes with respect to the Acquired Assets, other than the taxes provided for in Section 11.6(a) for a taxable period which includes but does not end on the Closing, shall be apportioned between the Trustee and the Buyer as of the Closing based on the number of days of such taxable period included in the pre-closing tax period and the number of days of such taxable period included in the post-closing tax period.  The Trustee shall be liable for the proportionate amount of taxes attributable to the pre-closing tax period.

        11.6.1 <u>Proration of Prepaid Items.</u>  Any and all expenses or liabilities which have been paid on behalf of the Trustee at or in advance of the Closing which

relate to the Acquire Assets shall be apportioned between the Trustee and the Buyer in accordance with Section 11.6(b).

[SIGNATURES BEGIN ON FOLLOWING PAGE]

**IN WITNESS WHEREOF**, the undersigned have executed this Assignment as of the date first above written

**TRUSTEE:**

**CHAPTER 7 TRUSTEE
OF SCIENCE FITNESS, LLC**

By: _Joy R Webster_
Name: Joy R. Webster
Title: Trustee

**BUYER:**

**Evans Fitness Club Express, LLC**
a Georgia limited liability company

By: _____
Michael L. Montarbo
Its: Managing Member

# EQUIPMENT LIST 2016

| Equipment | Qty |
|---|---|
| Life Fitness Treadmils | 30 |
| Precor Elipticals | 21 |
| Precor Step Mills | 7 |
| Jacobs Ladder | 1 |
| Stairmaster Stepmill | 2 |
| Concept2 Rower | 2 |
| Precor RBK (recumbent Bike) | 3 |
| Precor UBK (upright bike) | 2 |
| Versa Climber | 2 |
| Life Fitness (strength) Pin select | 34 |
| Free Motion (stregth) Pin select | 11 |
| Life Fitness "Smith" Machine | 3 |
| Hammer Strength Pin select | 12 |
| Hammer Strength (Plate load) | 24 |
| Core Bench (Ab machines) | 2 |
| Life Fitness (Ab machine) | 2 |
| Precor Stretch Trainer | 4 |
| Power VI Inversion Table | 1 |
| Life Fitness Bench Press (Free weight) | 6 |
| Life Fitness Shoulder Rack (Free weight) | 2 |
| Life Fitness Portable Bench (Free weight) | 5 |
| Hammer Strength Portable Bench (Free weight) | 1 |



| | |
|---|---|
| Life Fitness Shoulder Portable (Free weight) | 3 |
| Life Fitness Back Extension | 2 |
| Hammer Strength Pullup/Dip Stations | 2 |
| Life Fitness Cable Multi Gym | 1 |
| Life Fitness Preacher Curl (Free weight) | 2 |
| Hammer Strength Straight Bar Rack | 20-110 x10 |
| Hammer Strength Curl Bar Rack | 20-110 x10 |
| Dumbells | 10-90 (68) |
| Dumbells | 95-125 (12) |
| Live Strong Spin Bikes | 28 |

## EQUIPMENT LIST (CONTINUED)

### BOOT CAMP ROOM

| | |
|---|---|
| Power Plate Machine | 1 |
| Supersport Club Treadmill | 1 |
| Small Barbell Bars | 10 |
| Small Barbell Plates (assorted) | 400 lbs. |
| Weight Clamps | |
| Exercise Balls | 19 |
| Rack of Dumbbell Pairs (5-50 lbs.) | 1 |
| Rack with 12 (5 lb.) Dumbbells | 1 |
| Miscellaneous Dumbbells | 24 |
| Stretching Balls | 5 |
| Balance Discs | 3 |
| Kettlebells | 4 |
| Spin Bike | 1 |
| Sony Stereo System | 1 |
| Set of Ropes | 1 |
| Step Benches | 9 |
| Risers | 70 |

### OFFICE

| | |
|---|---|
| Desks | 2 |
| Chairs | 4 |
| File Cabinets | 2 |
| Computers w/ Monitors | 2 |
| Printers | 2 |
| Refrigerator | 1 |
| Microwave | 1 |

### CONFERENCE ROOM

| | |
|---|---|
| Round Table | 1 |
| Rectangular Folding Table | 1 |
| Chairs | 5 |

## KIDS KLUB

| | |
|---|---|
| Basketball Arcade Game | 1 |
| Tables | 3 |
| Chairs | 10 |
| Plastic Child's Table | 1 |
| Plastic Chairs | 5 |
| Plastic Child's Picnic Table | 1 |
| Kids Toys (Assorted) | |
| Child's Pneumatic Lifting Stations | 4 |
| Child's Punching Bag | 1 |
| Shelving Units | 3 |
| T.V. with DVD Player | 1 |
| Cabinets | 2 |

## LOBBY AREA

| | |
|---|---|
| Stereo System | 1 |
| Desks | 4 |
| Couch | 1 |
| Club Chairs | 3 |
| Brown Vinyl Lounge Chairs | 3 |
| Table | 1 |
| Desk Chairs | 10 |
| Computers w/ Monitors | 6 |
| Big Screen TVs (On Frame on Main Floor) | 4 |

## SPIN ROOM

| | |
|---|---|
| Onkyo Stereo System | 1 |
| Step Benches | 2 |
| Risers | 8 |
| Fans | 2 |
| Exercise Ball | 1 |
| Dumbbells, Small | 4 |

## GROUP FITNESS

| | |
|---|---|
| Stereo System & Stand | 1 |
| Barbells | 74 |
| Step Benches | 48 |
| Stands with smaller Dumbbells | 2 |
| Risers | 139 |
| Exercise Mats | 15 |
| Barbell Plates 10lb | 500 lbs. |
| Barbell Plates 7.5 lb. | 800 lbs. |
| Barbell Plates 5.0 lb. | 525 lbs. |
| Barbell Plates 2.5 lbs. | 270 lbs. |
| Lamps | 3 |
| Fans | 3 |
| Weight Clamps | |

CERTIFIED COPY OF RESOLUTION OF

THE MEMBERS OF

EVANS FITNESS CLUB EXPRESS, LLC

We do hereby certify, as the Managers of Evans Fitness Club Express, LLC, that the following is a true and correct copy of a resolution adopted unanimously by all Managers on behalf of EVANS FITNESS CLUB EXPRESS, LLC on September 7, 2016:

> RESOLVED, that Evans Fitness Club Express, LLC (the "Organization") is authorized and directed, through its designated agent, Michael Montarbo, for and on behalf of the Organization, to execute and deliver all necessary documents and perform all necessary acts with respect to any transactions involving Science Fitness, LLC by and through the United States Bankruptcy Court, Southern District of Georgia, on Thursday, September 8, 2016 in such form as the foregoing designated Agent executing same may approve, as conclusively evidenced by such execution.

IN WITNESS WHEREOF, I have caused this Certificate to be executed this ___ day of September, 2016.

**EVANS FITNESS CLUB EXPRESS, LLC,**
**a Georgia limited liability company**

By: _____
Name: William Smith
Title:   Manager

By: _____
Name: Marvin Katz
Title:   Manager