UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| SCIENCE FITNESS, LLC | ) | CASE NO. 14-12297-SDB |
|     DEBTOR | ) | CHAPTER 7 |
| | ) | |
| | ) | |
| EVANS PLAZA PARTNERS, LLC | ) | |
|     PLAINTIFF | ) | ADVERSARY PROCEEDING NO.: |
| | ) | 16-01035-SDB |
| | ) | |
| VS. | ) | |
| | ) | |
| JOY WEBSTER, CHAPTER 7 TRUSTEE, | ) | |
|     DEFENDANT, | ) | |
| | ) | |
| | ) | |
| | ) | |
| EVANS FITNESS CLUB EXPRESS, LLC | ) | |
|     DEFENDANT. | ) | |

## MEMORANDUM OF LAW

## UNDISPUTED FACTS

Evans Fitness Club Express, LLC (herein known as "Express") is the sole defendant left in an action having been brought by the Plaintiff against Express and the Trustee. The Trustee was dismissed by the Court as a result of Motions for Summary Judgment having been filed by the Trustee and the Plaintiff herein. The Court, in two prior rulings from these motions, has established a set of "undisputed facts" surrounding this case. Express will not restate the entire set of factual circumstances surrounding this case but will refer to the facts and testimony at trial pertinent to the issues currently under consideration by the Court.

After conversion from a Chapter 11 to a Chapter 7 Bankruptcy the Trustee was authorized to continue operating the Debtor's business in the belief that a sale of "going concern" would maximize the return to its' creditors. To accomplish this goal the Trustee sought

1

"to sell substantially all" of the Debtor's <u>assets</u> (Emphasis added). Express was the successful bidder. The Trustee and Express executed an Asset Purchase Agreement ("APA") consummating the sale. Section 2.1 (a) of the APA defined "acquired assets" as All of the Debtor's right, title and interest in the following:

> All accounts, contract rights, membership agreements, personal training contracts, contracts and all accounts receivable through ABC Financial and Club Ready, furniture, furnishings, equipment, inventory, and intellectual property required for the operation of the Debtor's business, goods held for sale, supplies, and other materials used or consumed in the Debtor's business. A copy of the equipment list is attached and incorporated into this Agreement.

The Court found the "equipment list" was not an exclusive list of the acquired assets of the Debtor. It is important to note that "acquired assets" included, in addition to the "furniture, furnishings, equipment…and materials used…" the " contract rights" of the Debtor.

The Asset Purchase Agreement also contained a provision titled "Excluded Assets" which defined the excluded assets as:

> (a) Any asset of the Debtor not defined in Acquired Assets; (b) Corporate record book and corporate seal; (c) Securities; (d) Any claim, right or cause of action of the Debtor or the Trustee that can be brought against third parties pursuant to the Bankruptcy Code; (e) Any claim, right or cause of action of the Debtor or the Trustee that can be asserted by the Trustee that is related to the Bankruptcy Case; (f) All of the Debtor's tax attributes and all tax refunds to which the Debtor may be entitled with respect to any period of the Debtor's operations through the Closing Date; and (g) Debtor in Possession bank accounts.

After the sale, Express began moving its' assets from the premises. It is the removal of disputed assets, i.e. whether they are "trade fixtures" or not, which is the basis of the issue before the Court. All the items which were in dispute have been resolved, either by the Court (lockers) or by agreement of the parties, with the exception of the mirrors and the items contained in the "juice bar," i.e. freestanding sink and 2 refrigerators.

At the conclusion of the hearing on May 31, 2018 the Court requested briefs to address the

issues of whether the disputed items are (1) trade fixtures and; (2) does Express own these items and; (3) does Express have the right to remove them.

## TRADE FIXTURES

The rule, that allows a tenant to remove fixtures annexed to a leasehold which he has placed upon said leasehold, known as the "trade fixture" exception, has been well established in Georgia for over 100 years. *Van Ness v. Packard* 27 U.S. 137, 7L Ed 384 (1829). *Wright v. DuBignon*, 114 Ga. 765, 40 S.E. 747 (1902). This right to remove trade fixtures is codified at O.C.G.A. §44-7-12. Property interests are created and defined by state law, *Kennedy v. Lane Foods*, 192 BR (United States Bankruptcy Court MD Georgia, 1996). This right to remove trade fixtures is protected even if the lease disallows the removal of fixtures. <u>In re Witherington</u>, 2014 Bankr Lexis 2329 (United States Bankruptcy Court S.D. Alabama 2014).

Trade fixtures are defined as articles placed in or attached to leased property by the tenant, to facilitate the trade or business for which he occupies the premises, or to be used in connection with such business, or promote the convenience and efficiency in conducting it. *Chouinard v. Leah Young Enterprises, Inc.* 205 Ga. App. 206, 422 S.E. 2d 204 (1992); *Oreroy v. Tate*, 211 Ga. 256 (1), 85 S.E. 2d 36 (1954). The term "trade fixture" by its' definition is intended to be broad. The courts have held trade fixtures to include a depot building erected by a railroad, <u>Carr v.</u> Garr, 74 Ga. 73 (1894), a meat smokehouse used by a meat processor, <u>Armour v.</u> Block, 147 Ga. 639, 955 E 228 (1918); an airplane hangar, <u>SS Air Inc. v. City of Vidalia</u>, 278 Ga. App. 149, SE 2d 117 (2006); and an awning over gas pumps that was cemented and bolted in place, <u>Lay Brothers v. Golden Pantry</u>, 273 Ga. App. 870. Any article of personalty which is attached to a leasehold to facilitate a business of the tenant can qualify as a trade fixture. It is only necessary that it be devoted to a trade purpose and that it be removable without material

3

injury to the premises or the essential characteristics of the chattel itself. *In re Ory v. Tate*, 211 Ga. 256, 85 S.E. 2d 36 (1954).

Mike Montarbo ("Montarbo"), Larry Hogue ("Hogue") and Daniel Hammond ("Hammond") all testified that mirrors are installed by gym owners for the benefit of their members customers to promote the use of the facilities. Larry Hogue, managing partner of Debtor, testified that mirrors and lockers are essential to clubs similar to the Debtor's, and that he would not have paid the "kind of money" that he did if he had known mirrors and lockers were not included. Hammond, a general contractor that has opened/assembled and closed/disassembled this type of health club across the southeast for hundreds of businesses, testified he has never opened this type of club without mirrors.

Hammond further testified that he was the person in the video removing the mirrors and that no special preparation was done before removal and that the video recorded the entire event without any editing. It took approximately 1 minute and 30 seconds to remove the mirror. This video presented to the Court the ease with which the mirrors can be removed.

Hammond also testified that the mirrors were installed in this manner in order to be easily attached and removed. He also pointed out that the mirrors are attached in this way to facilitate the replacement of mirrors that are damaged in the ordinary course of business. He further testified that his company almost always removes installed mirrors for purposes of reuse elsewhere or resale when a gym is being closed. For a similar fact pattern see *In re Demey Industrial*, 471 BR 541 (United States Bankruptcy Court, SD Texas, 2012).

Hammond further testified that the mirrors could be removed with only easily repairable damage to the leasehold. His company has been responsible, for patching, sanding and painting the walls of the Leaseholds when the mirrors were removed. Pictures of the repaired walls

4

where the mirrors were removed reflect no damage to the walls.

As to the disputed assets in the "juice room," Hogue testified that the Debtor opened a juice bar to sell health shakes and drinks to its' members. The disputed refrigerators had simply been unplugged from the electrical sockets. The "free standing" sink had been attached by means of a hose to a water faucet and to a drain in the floor. It was easily disconnected without damage to the leasehold.

It seems clear that the items currently in dispute are "trade fixtures".

## OWNERSHIP

The Court's next concern was that assuming these items to be "trade fixtures," how did Express end up buying them? The simple answer would be under the APA between the Debtor and Express. However, before it can be answered as to exactly what the Debtor sold to Express, one must examine what it purchased from its predecessor, G.H. Evans, LLC, and in turn what G.H. Evans purchased from its' predecessor Pro-Fit Management, Inc. Hammond testified at trial that he was the contractor that was initially hired to build/assemble the original health club located at 4408 Evans to Lock Road, Evans, Georgia. He was given the contract by Pro-Fit Management, Inc. for this project and that prior to the construction of the health club the premises had been used as a grocery store. He testified that as concerns the mirrors he installed all the mirrors prior to the club's opening. The sale of the club from Pro-Fit to G.H. Evans ("Evans APA, Defendant's Exhibit "1"") was completed sometime in the month of February, 2003. The Evans APA provided in pertinent part.

> 1. "Acquired Assets" pursuant to subparagraph 1 the seller agreed to sell and the buyer agreed to purchase "all of the Sellers right, title and interest in, to and under the assets…, held or used in the conduct of the business by the Seller…" (Emphasis added) and in

5

> 1.1 (f) ) indicated that "all other personal property and interest therein, including gym equipment, machinery, equipment, office equipment, computers, furniture, fixtures, vehicles, and other tangible property owned or leased by the seller and utilized in the operation of the business...".

Pro-Fit sold all its' assets to G.H. Evans.

In July, 2011 G.H. Evans (referred to as the "Seller") entered into an Asset Purchase and Sales Agreement with Science Fitness, LLC (Debtor herein) who was referred to as "Purchaser". (Debtor's APSA). Debtor's APSA provided under paragraph 2 that,

> "Seller hereby agrees to sell, assign, transfer and deliver to Purchaser, and Purchaser hereby agrees to purchase and accept from the Seller, effective as of the Closing Date, all right, title and interest of the Seller in and to all assets used the Seller's Business ("Assets"). The term "Assets" shall be deemed to include (but which is not exclusive), Seller's rights and obligations under its membership agreements and contracts for personal training services (including all future draft and installments payments paid by members after the Closing), all furniture, equipment (to include exercise equipment), computers, machinery, fixtures, assets, accounts receivable, customer lists, telephone numbers, and general intangibles (to include the exclusive use of the name "Omni Club Fitness Center" or any derivation thereof at the Business) used by Seller in Business. Specifically excluded from the term "Assets" shall be those items specifically set forth on Schedule 2, attached hereto ("Excluded Assets").

It is clear that G.H. Evans intended to sell and that the Debtor intended to buy all of the assets used in the operation of their business, i.e. (as Larry Hogue testified at trial) a "turn key" purchase.

Following the conversion to a Chapter 7 the Trustee sought to "sell substantially all" of the Debtor's assets including "(a)ll accounts, contract rights, membership agreements, personal training contracts, contracts and all accounts receivable, furniture, furnishings, equipment, inventory, intellectual property required for the operation of the Debtor's business, goods held for sale, supplies and other materials used or consumed in the Debtor's business." In each purchase agreement it was the intent of the seller to sell and the intent of the buyer to buy

6

"substantially all of the assets" of the seller. Each of the purchase agreements had a list of "Excluded Assets". Not one of the "Excluded Assets" list mentions that "trade fixtures" were excluded.

Schedule three of the APSA includes the assignment of the Lease between the Seller and the Landlord (Plaintiff herein) by the Purchaser. The parties have been operating under this Lease since the purchase by the Debtor.

Black's Law Dictionary (10th ed. 2014) defines "asset" as "any item owned that has value. All of the property of a person, especially a bankrupt, available for paying debts". Pursuant to O.C.G.A. §18-2-71 "asset" means property of a bankrupt. It would seem clear that property of a tenant that can be removed when he vacates a leasehold has value.

A bankruptcy estate is created upon the filing of a bankruptcy petition. Section 541 of the Bankruptcy Code provides that the bankruptcy estate encompasses all "legal or equitable interest of the Debtor in property as of the commencement of the case." 11 U.S.C. §541 (a) (1). "Every conceivable interest of the debtor, future, non-possessory, contingent, speculative, and derivative, is within the reach of Section 541". *Mendelsohn v. Ross*, 251 F. Supp. 3d, 581, U.S. District Court, E.D. (2017). The concept of property is broad enough to embrace anything that has exchangeable value. *In re Ames Department Stores, Inc.* BR 112 (2002). It should be pointed out that the Trustee's Motion to Sell as well as the Order of the Court giving notice of the Trustee's Motion to Sell indicated that the Debtor's petition listed personal property in Schedule B including "exercise equipment, furniture, fixtures and leasehold improvements with a value of $200,000.00" and that these assets were being offered for sale. Further, as this Court has pointed out in its' Opinion and Order in the Chapter 7 Case No. 14-12297, Adversary Proceeding Case No. 16-01034 (Docket No. 78) because this transaction involves the sale of

goods, Georgia's Uniform Commercial Code applies. The use of UCC definition for the acquired asset "equipment" is much broader and more inclusive than previously argued to the Court. If equipment is defined as "goods, other than inventory, farm products or consumer goods." (O.C.G.A. §11-9-102 (34)) and "Goods" are defined as "(a)ll things that are movable when a security interest attaches" (O.C.G.A. §11-9-102(45)) therefore the APA between Debtor and Express encompasses all the personal property of the Debtor.

Express respectfully asserts that the estate created by Section 541 is broad enough to include all assets of the Debtor's estate, including trade fixtures. *In re Demay International,* LLC, 471 BR 510 (United States District Court, S.D. Texas, 2012) The Trustee sold the Debtor's assets with a view towards securing for the creditors everything of value belonging to the bankrupt. *In re Robbins Converting Corporation*, 441 5th 2d 1096, (2d Cir. 1971). It seems clear that Express purchased all the assets of the Debtor's bankruptcy estate.

## REMOVAL OF TRADE FIXTURES

The last issue if Express correctly understands the Court's concerns is whether Express had the right to remove the trade fixtures. Express's right to possess and remove the trade fixtures is determined by the Debtor's rights contained in the Lease which was in effect at the time the Debtor's estate was created.

Pursuant to 11 U.S.C. §541 the commencement of a case under provisions of the Bankruptcy Code creates an estate. It is well settled that a debtor's interest as a lessee in an unexpired lease (i.e. a leasehold interest) is property of the estate. *In re Drexel Burnham Lambert Group, Inc.* 138 BR 687 (Bankr S.D. New York, 1992); *In re Palace Quality Services Industries, Inc*, 283 BR 868 (United States Bankruptcy Court, E.D. Michigan, 2002). At the time of the sale of the Debtor's assets it is without dispute the Debtor's lease with the Plaintiff was

8

still in effect. By Court Order, the time to assume or reject did not expire until September 30, 2016. This was the second extension of this deadline. Both extensions had been properly noticed and no objection was filed by the Plaintiff.

The Court expressed some concern that the lease was "non-assumed" but not rejected. Under the Bankruptcy Code executory contracts and unexpired leases automatically become part of the bankruptcy estate at the inception of the bankruptcy proceeding (see Palace above) and are protected by automatic stay. *In re Enron*, 300 BR 201 (Bankr S.D. New York, 2003). On the other hand a rejection of the lease would not have made any contract right that the Debtor had disappear or abrogate any duties of the Plaintiff required under the lease. See *In re Drexel* above.

Looking to the lease to determine the intent of the parties it is clear that the Plaintiff recognized the Debtor's rights to remove its' "trade fixtures." The term "trade fixtures" is used three times in this Lease.

Paragraph 8(B) provides that certain specified additions, alterations, etc. except for "trade fixtures installable by Tenant at Tenant's expense shall be property of the Landlord."

Paragraph 10(D) titled "Alterations" provides that alterations, additions and improvements except for "movable furnishings, equipment and trade fixtures installed at Tenant's cost" become part of Landlord's real estate.

Paragraph 20 dealing with the surrendering of premises has mandatory language that the Tenant "shall" remove any and all trade fixtures and "shall" repair any damage caused by such removal. It would seem clear that the parties to the Lease intended that trade fixtures be removed. (Emphasis added).

If the Debtor had the contract right to remove its' "trade fixtures" did Express buy these

9

contract rights? Courts have consistently held that contract rights are property of a Debtor's estate, *In re Ames Department Stores*, 287 BR 112 (Bankr S.D. New York, 2002). The Ames case, in a Chapter 11 Liquidation, dealt with the sale of "designation rights" under Debtor's right to assign Leases. Court held that these rights had value and were property of the estate.

The APA under which Express asserts its' rights defines "Acquired assets" as to include "contract rights." Contract rights are those rights which are created under or pursuant to a valid contract. Contract rights are acquired when the contract was made. *Bremen Bank and Trust Co. v. US*, 131 F 3d 1259 (8th Cir. 1997). At the time the Debtor's assets were sold to Express on September 27, 2016, the Lease was still valid. The Lease evidences the parties intended that trade fixtures, without regard to cost, shall be removed (Paragraph 20). Clearly Express paid for the Debtor's trade fixtures and the Lease anticipated and required their removal. It is equally clear to Express that these "disputed items," in particular the mirrors, are "trade fixtures". Debtor installed them (by way of purchasing them from G.H. Evans) for the benefit of its' members. They are expected to get broken due to normal operating conditions and are attached so that they may be easily replaced. Any damage to the Plaintiff's Leasehold was minimal and had been repaired before Express left the premises. The Debtor sold its' rights, pursuant to the Lease to remove trade fixtures to Express.

For the above reasons, Express believes that they were entitled to remove the aforementioned "disputed items".

This the 25th day of June, 2018.

                                                /s/ John P. Claeys
                                                John P. Claeys
                                                Georgia Bar No. 126325

Claeys, McElroy-Magruder & Kitchens
512 Telfair Street
Augusta, GA 30901
706-724-6000

11

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| SCIENCE FITNESS, LLC ) | CASE NO. 14-12297-SDB |
| DEBTOR ) | CHAPTER 7 |
| _____ ) | |
| ) | |
| EVANS PLAZA PARTNERS, LLC ) | |
| PLAINTIFF ) | ADVERSARY PROCEEDING NO.: |
| ) | 16-01035-SDB |
| ) | |
| VS. ) | |
| ) | |
| JOY WEBSTER, CHAPTER 7 TRUSTEE, ) | |
| DEFENDANT, ) | |
| ) | |
| ) | |
| ) | |
| EVANS FITNESS CLUB EXPRESS, LLC ) | |
| DEFENDANT. ) | |

CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing MEMORANDUM OF LAW upon the following by electronic service, and/or placing a copy of the same in the United States Mail with adequate postage affixed thereto.

Robert M. Matson
Attorney for Trustee
Akin, Webster & Matson, P.C.
Post Office Box 1773
Macon, Georgia 31202

Matthew E. Mills
Assistant United States Trustee
Office of the United States Trustee
Johnson Square Business Center
2 East Bryan Street, Ste 725
Savannah GA 30140

Nathan Huff
Law Office of Nathan E. Huff
228 Baston Road
Augusta, Georgia 30907

Jon A. Levis
Merrill & Stone, LLC
PO Box 129
Swainsboro GA 30401

This the 25th day of June, 2018.

Claeys, McElroy-Magruder & Kitchens
512 Telfair Street
Augusta, Georgia 30901
Phone: 706-722-8952

/s/John P. Claeys
JOHN P. CLAEYS
Attorney for Defendant
Georgia Bar No.:126325