**IT IS ORDERED as set forth below:**



**Date: March 31, 2020**

_____
Susan D. Barrett
United States Bankruptcy Judge
Southern District of Georgia

---

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Augusta Division

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 Case |
| | ) | Number <u>14-12297</u> |
| SCIENCE FITNESS, LLC, | ) | |
| | ) | |
| Debtor | ) | |
| ———————————————— | ) | |
| | ) | |
| EVANS PLAZA PARTNERS, LLC, | ) | Adversary Proceeding |
| | ) | Number <u>16-01035</u> |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EVANS FITNESS CLUB EXPRESS, LLC | ) | |
| | ) | |
| Defendant | ) | |
| ———————————————— | ) | |

<u>**OPINION AND ORDER**</u>

Before the Court is the damage portion of the complaint filed

by Evans Plaza Partners, LLC ("Landlord") against Evans Fitness Club

Express, LLC ("Express") alleging Express improperly removed property belonging to Landlord.  The issues addressed are:  1) whether Landlord is entitled to holdover rent; and (2) whether Express is entitled to damages for 41 missing mirrors.  This adversary proceeding is a core proceeding under 28 U.S.C. §157(b)(2)(A), (N), and (O) and the Court has jurisdiction pursuant to 28 U.S.C. §1334.  For the following reasons, the Court finds the Landlord is not entitled to holdover rent; and Express is entitled to damages in the amount of $2,870.00.

**FINDINGS OF FACT**

When Science Fitness, LLC ("Debtor") filed its bankruptcy petition it was operating a health club at premises it leased from the Landlord.[1]  As part of the bankruptcy, the Chapter 7 Trustee ("Trustee"), via a competitive bidding process, sold substantially all of Debtor's assets to Express for $405,900.00 with a closing by September 27, 2016.  At the Trustee's request, and with the consent of Landlord, the time for the Trustee to assume/reject the lease was extended through and including September 30, 2016.  Chap. 7 Case No. 14-12297, Dckt. No. 308.  The lease was not assumed by the Trustee and therefore was rejected as of October 1, 2016.  Dckt. No. 165, Tr. 45:8-12.  With Landlord's consent, Express was given the right to

---

[1]  These are abbreviated facts with more detailed facts set forth in the order found at Dckt. No. 136.

2

enter the leased premises at certain hours from October 5-7, 2016 to remove the purchased assets. Dckt. Nos. 10 and 15. For this right, Express tendered seven days (October 1-7) prorated rent to the Landlord. Tr. 46:12-21.

The current dispute arose over whether Express purchased certain assets (various lockers, mirrors, water fountains, and other items) ("Disputed Items") as part of the sale and whether Express heldover and damaged the premises. Landlord filed this adversary proceeding initially requesting an injunction to prevent Express from removing the Disputed Items from the premises. Dckt. No. 1. Ultimately, the parties consensually entered into a storage agreement whereby Landlord agreed to store the Disputed Items at the premises pending resolution of the various disputes. Dckt. No. 15.

On the liability portion of the trial, the Court entered an order ("Liability Order") regarding the Disputed Items, holding the lockers and mirrors located in the "New Addition" belong to the Landlord, while the remaining mirrors belong to Express. Dckt. No. 136.

In the damages trial currently before the Court, Landlord claims three-months holdover rent as calculated under paragraph 20 of the lease. Landlord alleges it was unable to fully deliver possession of the premises to its new tenant, Gold's Gym ("Gold's"), pending

3

resolution of the ownership issues, and that Express's damage to the premises and the storage of the Disputed Items prevented Landlord from delivering the premises to Gold's. Dckt. No. 165, Tr. 21:22-25; 22:1-6.

Landlord and Gold's entered into a lease in September 2016, before the sale to Express was completed. Def. Ex. No. 9, Lease. According to Mr. Simeone,[2] Gold's was given access to the property sometime in October 2016, but Landlord claims because of the disputes with Express it could not deliver possession to Gold's sufficient to trigger the commencement of rent until January 2017. Dckt. No. 165, Tr. 36:1-25; 38:6-25; 40:15-17; 50:21-25; 52:12-25; 53:1-24.

Express's damage claim is for the mirrors the Liability Order determined were included in the assets Express purchased from the Trustee. Mr. Hammonds, the contractor Express hired to remove the mirrors and other equipment, testified that with his contractor's license he was able to purchase 60" by 100" mirrors in mid-2018 at wholesale price of $70.00/mirror. Dckt. No. 165, Tr. 141:4-16; 142:1-22. At the damages hearing he initially testified the retail price was $470.00/mirror, but he had never paid more than $200.00/mirror. Dckt. No. 165, Tr. 141:4-16; 142:10-11. He ultimately testified the

---

[2] Manager of Landlord.

4

purchase and installation cost ranged from $250.00-$350.00/mirror. Dckt. No. 165, Tr. 143:1-17.

Mr. Hogue, who was operating the day to day operations of Debtor for the Trustee at the time of the sale and during the removal process, also testified on behalf of Express.  Dckt. No. 165, Tr. 151:6-15.  According to Mr. Hogue, he previously paid approximately $300.00/mirror for the purchase and installation of mirrors.  Id., Tr. 164:3-12.

Mr. Montarbo, the former business manager of Express testified, in his lay opinion, it would cost anywhere from $250.00-$375.00/mirror retail to replace and install the 60" x 100" mirrors. Id., Tr. 183:5-20.

### CONCLUSIONS OF LAW

Before the Court is the issue of damages.  Landlord claims holdover rent is due for the three months (October – December) it was unable to duly deliver the premises to the new tenant because of:  the ownership dispute; its on-site storage of the Disputed Items; and the damage caused by Express when it removed the assets.  Conversely, Express claims it is entitled to the installed retail value of the mirrors it purchased.  Both parties acknowledge they have the burden of proof on their respective damage claims. Dckt. No. 165, Tr. 222:22-25; 223:1-3.

5

**Landlord's Damage Claim For Holdover Rent**.

Landlord argues Express is liable under the provisions of the lease between Landlord and Debtor because Express purchased "all accounts, <u>contract rights</u>, membership agreements, personal training contracts, <u>contracts</u> and all accounts receivable . . ." under the asset purchase agreement between Express and the Trustee ("APA") Dckt. No. 45, Ex. No. 6, Asset Purchase Agreement (emphasis added). Landlord also avers Express was a transferee of the Debtor under the lease. According to Landlord, Express, as a purchaser/transferee, is liable for holdover rent under the lease from October-December 2016 because during that time, Landlord was unable to deliver possession to its new tenant because of: the ownership dispute; its lack of access to the area where the Disputed Items were stored; and the damage caused by Express.

The Lease holdover provision provides:

> **Holding Over.** Landlord and Tenant recognize and agree that the damage to Landlord resulting from any failure by Tenant <u>timely to surrender possession</u> of the Leased Premises as aforesaid will exceed the amount to the Base Rent theretofore payable hereunder, and accurate measurement will be impossible, Tenant therefore agrees that if Tenant or anyone claiming under Tenant remains in possession of the Lease Premises after the expiration of the Lease Term, such party shall be a tenant at sufferance and during such holding over, <u>Base Rent and all items of other Rent shall be twice the rate which was in effect immediately prior to the Lease Term expiration</u>, which Landlord may collect without admission that Tenant's estate is more than a tenancy

6

at sufference, and all the other provisions of this
Lease shall apply insofar as the same are applicable.
In the event Tenant holds over in the Leased Premises,
then whether or not Tenant is charged twice the base
Rent and other Rent as set forth herein, Tenant hereby
relinquishes any right Tenant may have to receive a
return of the Security Deposit at the end of such hold
over period, and Tenant shall remain liable for all
costs, expenses, claims, liabilities and damages of
whatever kind and nature arise from such holdover.

Pl.'s Ex. No. 1(A), ¶20(b)(emphasis added).

Express argues it cannot be liable for holdover rent because
the lease was rejected on September 30, 2016 and the Trustee never
assumed the lease therefore the Trustee could not have
assigned/transferred it to Express.   See Chap. 7 Case No. 14-12297,
Dckt. No. 308.   Express, further contends it is not a holdover
situation when the new tenant, Gold's, was given access to the premises
during the purported holdover period.   Alternatively, Express argues
even if the lease was a contract right or contract under the APA, the
Trustee had no right to convey the lease and any such conveyance
without the Landlord's consent is void under the terms of the lease.
See Pl.'s Ex. No. 1(A), Lease, ¶19. ("Tenant shall not assign, convey
or otherwise transfer this lease or any interest thereunder . . .
without first obtaining on each occasion Landlord's prior written
consent . . . . ").

Based upon the evidence, the Court finds Landlord has failed
to carry its burden of proof to show it is entitled to holdover damages

7

of two times the rent for three months. First, Express is not a tenant under the lease. The Trustee never assumed the lease and pursuant to §365(f)(2)[3] the lease was rejected on September 30, 2016 and the Trustee could not have assigned/transferred the lease to Express. See 11 U.S.C. §365(f)(2)(The trustee may assign an executory contract or unexpired lease of the debtor only if the trustee assumes such contract or lease in accordance with the provisions of this section . . . .")(emphasis added). The Trustee rejected the lease and therefore it was not an asset Express purchased under the APA, nor was the lease assigned/transferred to Express. Furthermore, even if it was a "contract right" or "contract", the Landlord never consented to such a conveyance therefore any transfer of the lease from the Trustee to Express would be void. See Pl.'s Ex. No. 1(A), Lease, ¶19.

Finally, even if Express was a tenant, this not a holdover situation under the lease. See Pl.'s Ex. No. 1(A), ¶20(b)("[T]enant therefore agrees that if Tenant or anyone claiming under Tenant remains in possession of the Lease Premises after the expiration of the Lease Term, such party shall be a tenant at sufferance and during such holding over, Base Rent and all items of other Rent shall be

---

[3] Unless otherwise noted, all code sections are under Title 11 of the United States Code.

AO 72A

(Rev. 8/82)

twice the rate which was in effect immediately prior to the Lease Term expiration . . . .")(emphasis added).   It is undisputed Express left the premises October 7th in accordance with the agreements set forth in court orders.   See Dckt. Nos. 10 and 15.   It did not "remain in possession" as set in the lease.   In fact, Landlord entered into a lease with Gold's in September 2016, before the sale to Express was even concluded, and Gold's was allowed to access the premises to start renovations shortly after the October 7, 2016 departure date. Notwithstanding Landlord's arguments to the contrary, this is possession and control over the premises under Georgia law, and given the facts of this case such actions discharge Express of any liability for holdover rent.   Johnson v. Watkins, 107 S.E. 341, 341 (Ga. Ct. App. 1921)("If, pending a tenancy, the landlord directly or indirectly resumes possession of the premises by acts amounting to an actual or constructive eviction of the tenant, or if the tenant becomes dissatisfied, and offers to surrender possession to the landlord, and the landlord thereafter resumes possession, or exerts a control over the premises inconsistent with the tenant's right of occupation, he thereby discharges the tenant from liability for future rent.").

As for Landlord's argument that it did not have access to the entire premises because of the on-site storage, it was Landlord who agreed to store the items on-site, rather than at an off-site

9

facility.  It cannot now complain it was denied access to this storage area.

Landlord also argues it is entitled to these holdover damages because the ownership dispute prevented it from delivering the premises to Gold's.[4]  Ultimately, as set forth in the Liability Order some of the items were determined to belong to the Landlord and some items determined to belong to Express.  The outcome of this ownership dispute should not trigger holdover rent damages under the lease. Landlord supported the bid of Gold's and clearly did not support Express's efforts to buy these assets.  Obviously, if Gold's was the successful bidder it would own the on-site assets.  However, Express is not liable to Landlord for holdover rent for being the successful bidder and removing assets it purchased under the APA.  Furthermore, Landlord delivered possession of the premises to Gold's in January 2017, prior to any order being entered on ownership and while it was still storing mirrors.  Landlord could have delivered possession in October 2016, and the ongoing work to the leasehold reflects delivery

---

[4]  The Landlord says when this matter continued to be contentious and drawn-out, it ultimately opted to mitigate damages and delivered the premises to Gold's prior to the resolution of the ownership/damage issues.  Dckt. No. 165, Tr. 23:17-25; 24:1-3.  There have been motions for summary judgment, two related adversary proceedings, attempts at mediation, briefings, new lawyers being added and removed, and two trials.  This is in addition to the issues with the Trustee and matters in the underlying bankruptcy itself.

10

had occurred.  Given these facts, Landlord's rent abatement to Gold's does not equate to a holdover tenancy by Express.

Lastly, Landlord failed to carry its burden of proof as to the appropriate calculation of damages.  The damage calculation would be through the Trustee.[5]   Landlord would be entitled to an administrative claim for post-rejection rent, but only for the actual and necessary costs, not holdover rent as calculated under the lease. See 11 U.S.C. §503(b)(1)(A); see In re Homeowner's Outlet Mall Exchange, Inc., 89 B.R. 965, 970 (Bankr. S.D. Fla. 1988)(trustee only liable for the rent prorated for the portion of premises actually occupied by debtor post rejection as an actual and necessary cost); In re Rare Coin Galleries of Am., Inc., 72 B.R. 415, 417 (D. Mass. 1987)(post-rejection, lease rate no longer controls, the debtor is only required to pay the reasonable rental value)(internal citations omitted); In re Aerospace Tech., Inc., 199 B.R. 331, 340 (Bankr. M.D.N.C. 1996)(where creditor stored estate property, reasonable rental value of premises occupied and used was correct measure of damages).  Holdover rent of two times the rent rate is improper.

For these reasons, the Court finds Landlord is not entitled to holdover rent under the lease.

---

[5] Express agreed to indemnify Trustee.  See Dckt. 45, Ex. No. 6, APA, ¶8.5.

**Express's Damage Claim for Mirrors**.

Express claims it is entitled to monetary damages for the replacement costs of the mirrors the Court previously determined belonged to Express. The mirrors were stored at the premises but disappeared during the pendency of this dispute. This analysis involves two issues. First, the value of the mirrors; and second, the number of mirrors.

At trial, Express admits there was a wide range of value testimony regarding the mirrors. Mr. Hammonds was reminded he previously testified he could obtain a 60" by 100" mirror at the wholesale contractor's price of $70.00/mirror, with installation cost of $250.00-$350.00/mirror. Dckt. No. 165, Tr. 141:4-16; Tr. 143:1-17. Mr. Hogue testified replacing a mirror would cost around $300.00, with installation included. Id., Tr. 164:3-12. Mr. Montarbo testified that the retail and installation cost would be $250.00-$375.00/mirror. Id., Tr. 183:5-20. Mr. Simeone testified the mirror cost range from $70.00-$100.00/mirror.[6]

Express argues the $70.00 wholesale price is too low because Express is not a general contractor and would have to pay retail

---

[6] Mr. Simeone based this value on a calculation of 80 mirrors costing $10,000.00, which would actually be $125.00/mirror. Dckt. No. 165, Tr. 197:15-25. It is unclear as to the comparable nature of these mirrors as to the quality, style and dimensions. Id.

AO 72A

(Rev. 8/82)

price, but it offered no testimony of the retail price without including installation.  Express is not entitled the installation cost because it bought uninstalled mirrors from the Trustee and would have to pay for the installation.

As for the number of mirrors at issue, the exhibit tendered at the damages trial, signed by a representative of Trustee, Landlord and Express shows Express is entitled to 41 mirrors.  Pl.'s Ex. No. 15; See also Dckt. No. 165, Tr. 89:18-25; 90:1-5.  Based upon the testimony presented, as well as Plaintiff's Exhibit 15, the Court finds Express is entitled to 41 mirrors at the price of $70.00/mirror for a total of $2,870.00.

For the foregoing reasons, Landlord's complaint for damages is ORDERED DENIED. It is FURTHERED ORDERED that Express is awarded damages in the amount of $2,870.00.

AO 72A
(Rev. 8/82)